UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JACQUELINE CARTER AS NEXT OF FRIEND FOR WILLIAM H. CARTER | CIVIL ACTION NO. 17-1289 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Reconsideration filed by Defendants City of Shreveport, Corporal Louis Butler ("Butler"), Corporal Jennifer Hurst ("Hurst"), Corporal Julie Smith Pfender ("Pfender"), Captain Debbie Strickland ("Strickland"), and Jailers Tantunika Tobin ("Tobin"), Trineice Nesbitt ("Nesbitt"), Barbara Norsworthy ("Norsworthy"), and Alfredo Lofton ("Lofton"). See Record Document 83. Plaintiff opposes the Motion. See Record Document 88. Defendants have filed a reply to Plaintiff's opposition. See Record Document 89. Plaintiff has filed a rebuttal. See Record Document 92. For the reasons that follow, the Motion for Reconsideration is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff has filed suit on behalf of her wheelchair-bound son, William Carter ("Carter"), who was allegedly provided inadequate medical care by Defendants while incarcerated at the Shreveport City Jail. See Record Document 20. According to the Plaintiff, the actions of arresting officers and jailers caused the infection of Carter's bed sores, ultimately leading to his hospitalization. See Record Document 92.

On January 21, 2021, the Court issued a Memorandum Ruling granting in part and denying in part Defendants' Motion for Summary Judgment. See Record Document 81.

The Court dismissed Plaintiff's § 1983 claim against the City of Shreveport, as well as all claims against Lt. Joseph Dews. See id. However, the Court held that genuine disputes of material fact existed with respect to all remaining § 1983 claims against the individual Defendants, the failure to accommodate claim under the Americans with Disabilities Act ("ADA") against the City of Shreveport, and on the issue of causation. See id. Defendants now seek reconsideration of this Memorandum Ruling.

**LAW AND ANALYSIS**

### I.  Legal Standard

The Federal Rules of Civil Procedure do not explicitly recognize a motion for reconsideration; however, such motions are typically analyzed under either Rule 59(e) or 54(b), depending upon whether the Court is asked to reevaluate a final judgment or an interlocutory order. See Cobell v. Jewell, 802 F.3d 12, 25 (D.C. Cir. 2015). Because Defendants seek reconsideration from an interlocutory order—the partial denial of summary judgment—the Court's starting point is Rule 54(b). The applicable standard for review under Rule 54(b) is not as exacting as that for Rule 59(e), reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." Id. (quoting Greene v. Union Mutual Life Ins. Co. of Am., 764 F.2d 19, 22 (1st Cir. 1985)). Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even without a showing of new evidence or an intervening change in the substantive law. See Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir. 2017).

## II. Analysis

Defendants' Motion for Reconsideration argues the Court committed manifest errors of law and fact in partially denying their Motion for Summary Judgment. See Record Document 83-1 at 3. They first argue the Court erred in dividing the individual Defendants into two groups before conducting its analysis under § 1983. See id. Next, the Defendants reiterate their previous arguments that each officer was not deliberately indifferent to Carter's medical needs in violation of § 1983. See id. at 6-17. Defendants also attack the issue of causation before finally arguing the officers are entitled to qualified immunity on Plaintiff's failure to accommodate claim. See id. at 17-20.

### A. Grouping of Defendants

In a § 1983 action, the conduct of each defendant who has been sued in his individual capacity should be examined separately, unless the defendants acted in unison at every moment. See Jacobs v. West Feliciana Sheriff's Dept., 228 F.3d 388, 395 (5th Cir. 2000); Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999); see also Meadours v. Ermel, 483 F.3d 417, 421 (5th Cir. 2007). Defendants argue that the Court failed to analyze each officer's actions individually by grouping them according to whether their interactions with Carter took place during his arrest and transportation or while he was incarcerated. See Record Document 83-1 at 3.

The Court disagrees with Defendants' characterization of its analysis. The Court's grouping of Defendants as either "Arresting Officers" or "Shreveport City Jail Officers"[1]

---

[1] The Court notes that a third subheading for Strickland labeled "Supervisor Liability" also is present in its Memorandum Ruling. See Record Document 81. However, because she is the only officer analyzed in this section, Defendants do not argue she was jointly analyzed.

was purposefully done due to the nature of Plaintiff's § 1983 deliberate indifference claims, which include bringing Carter to the Shreveport City Jail despite his bed sores and inadequately treating Carter while he was there. A clear point of divide emerges between the three Defendants who arrested and transported Carter and the four Defendants who oversaw him in Jail. The Court believes this was a sensible organization scheme given the circumstances of this matter.

Further, within each grouping, each Defendant was in fact individually analyzed under § 1983. See Record Document 81 at 5-9. The Court noted each officer's specific interactions with Carter ranging from initial officer on-scene for Carter's arrest to intake screening at the Shreveport City Jail to his release from custody. See id. The Court analyzed these interactions for possible deliberate indifference under the proper summary judgment standard, relying upon deposition testimony from the officers themselves when available. See id. This approach stands in stark contrast to the case law cited by Defendants, where the district courts in Meadours, Jacobs, and Hill v. New Orleans City[2] all analyzed officers' actions collectively, failing to explicitly address the officers independently. See Record Document 83-1 at 4. While the Court opted against giving each Defendant his or her own separate subheading for analysis in its Memorandum Ruling, each individual was indeed evaluated separately.

### B. Denial of Summary Judgment on § 1983 Claims

The bulk of Defendants' Motion for Reconsideration reargues that summary judgment is appropriate with respect to each individual officer because their actions do

---

[2] 643 Fed. Appx. 332, 337 (5th Cir. 2016).

not rise to the level of deliberate indifference under § 1983. See Record Document 83-1 at 4-17. While the Court's Memorandum Ruling details the multitude of evidence it relied upon in holding that a genuine dispute of material fact remained as to these claims, the Court will address several new and elaborated arguments Defendants now make.

First, Defendants reiterate that no excessive risk of harm to Carter existed at the time of his arrest, and therefore, there is no need to delve into the possible subjective knowledge of officers. See id. at 4. Defendants state "at no time during his arrest or incarceration at the Shreveport City Jail did the failure to transport Carter to the hospital create a substantial and significant risk to his health." Id. The Court disagrees. As outlined at length in its Memorandum Ruling, police department policy required officers to call the Shreveport Fire Department to determine whether an arrestee should be taken to a hospital or jail when the officers are aware of open wounds. See Record Document 80 at 6. This policy is undoubtedly in place because certain situations require medical care more suitable for a hospital than jail. Circumstances certainly exist where taking an arrestee with open wounds to jail instead of a hospital could create an excessive risk of harm. Whether officers electing to take Carter to jail instead of the hospital or calling the Fire Department created an excessive risk of harm to Carter remains a contested factual dispute for which summary judgment is inappropriate.

Defendants next examine arresting officers Butler, Hurst, and Pfender, arguing each lacked subjective awareness that Carter would face a substantial and significant risk if he was not transported to a hospital and did not consciously disregard that risk. See Record Document 83-1 at 7-10. At most, they argue, the failure to follow department policy constituted negligence as opposed to the wanton disregard required for deliberate

indifference. See id. The Court still believes Plaintiff has produced sufficient evidence to create a genuine dispute of material fact on this issue. Specifically, the depositions of Butler, Hurst, and Pfender all indicate awareness of Carter's "down to the bone" bed sores and department policy for ascertaining the proper location for arrestees with open wounds. Nevertheless, all three officers played a role in Carter's transportation to the Shreveport City Jail, where his wounds ultimately deteriorated. Significant evidence has been produced to this point to preclude summary judgment as to all three arresting officers. The trier of fact must determine whether subjective awareness existed to constitute deliberate indifference.

Turning to Jailers Tobin, Nesbitt, Norsworthy, and Lofton, Defendants' Motion argues the Court "failed to analyze the individual actions of each jailer and failed to determine whether any individual jailer had subjective knowledge of an excessive risk to Carter's health and then consciously disregarded that risk." Id. at 10. Once again, the Court described each officer's point(s) of interaction with Carter before examining deposition and documentary evidence that demonstrated genuine disputes of material fact remain on this issue. This evidence shows that each jailing officer was aware of Carter's bed sores, and despite Dr. Dixon's report prescribing bandages and ordering assistance in changing them, no aid was given. See Record Document 81 at 8. Jailers were aware of the presence of these bandages in Carter's cell, as well as the potential difficulty he would have in changing them himself. See id. Contested factual issues also exist as to whether Jailers observed the deterioration of Carter's bed sores while supervising his showers or noticed a stench emanating from him. See id. While some officers argue Carter was combative to the extent they could not render assistance and

others argue they lacked the subjective intent to fail to treat him, these issues are best left to the trier of fact. To this point, sufficient evidence has been introduced to preclude summary judgment.

Defendants final argument on the Court's denial of summary judgment as to Plaintiff's § 1983 claims concerns its analysis of supervisor liability for Strickland. See Record Document 83-1 at 15. The Motion argues the Court erred in finding viability to a failure to supervise or train claim, specifically the third prong requiring that the failure to supervise or train amounted to deliberate indifference to constitutional rights. See id. The Court reiterates that the disconnect between Strickland's deposition testimony on Jail policies and her employees' actions with respect to Carter require this claim move forward. See Record Document 81 at 9-10. Strickland testified that (1) her subordinates are not trained on how to medically care for handicapped individuals, (2) the Shreveport City Jail receives three to four handicapped individuals per month, (3) the policy of the Jail is not to accept any wheelchair-bound individuals regardless of health status, and (4) she believes the Jail cannot adequately care for these individuals. See Record Document 57-7 at Ex. DS. These contradictory statements certainly could constitute deliberate indifference to prisoners' constitutional rights, assuming—as was allegedly the case with Carter—arrestees are brought to and housed at a facility that cannot care for their medical needs. As such, this claim for supervisory liability must be preserved.

### C. Causation

Defendants believe the evidence presented by Plaintiff and Carter's primary physician Dr. Ibrahim is insufficient to create a genuine dispute of material fact. See Record Document 83-1 at 17-18. As discussed in its Memorandum Ruling, Plaintiff's

layperson testimony as to the size increase of Carter's bed sores following his stint in the Shreveport City Jail is acceptable evidence in light of the near-decades worth of experience she has caring for her son. See Record Document 81 at 15. Further, Dr. Ibrahim's deposition testimony indicates that merely three days after his release from the Shreveport City Jail on October 21, 2016, he prescribed antibiotics for Carter to treat infection of his bed sores. See Record Document 92-1. Circumstantial evidence has been produced by Plaintiff to create a factual dispute as to whether Carter's time in jail led to infection of his bed sores. Any counter evidence from Defendants' medical expert raising alternative causes may be produced at trial.

### D. ADA Claim

After receiving clarification from Plaintiff that her ADA failure to accommodate claim is directed towards the City of Shreveport not the individual officers, Defendants argue Carter was not deprived or excluded from any service, program, or activity because he was provided the necessary materials for bandage changes, allowed to see a doctor, and given medication. See Record Document 89 at 9. They further argue failure to assist Carter cannot rise to the level of an ADA violation "when his wounds were covered by his clothes, and in the absence of any evidence that his wounds were physically observed by any jailer." Id. at 10. Lastly, Defendants argue the City of Shreveport did in fact accommodate Carter by releasing him when it became evident that Carter needed more medical care than the Jail could provide. Id.

The Court's Memorandum Ruling held Plaintiff's summary judgment evidence demonstrated officer awareness of Carter's bed sores and the perceived inability to self-change bandages on his backside. See Record Document 81 at 18. At the current stage,

this is sufficient to establish a genuine dispute of material fact and any argument that Jailers were unaware of his bed sores or how to prevent their worsening cannot be accepted. Carter's eventual release from the Shreveport City Jail also does not alleviate the shortcomings of the facility during his time incarcerated. Summary judgment was properly denied with respect to Plaintiff's failure to accommodate claim.

## CONCLUSION

In issuing its Memorandum Ruling, the Court analyzed numerous depositions and medical records before determining genuine disputes of material fact existed for the issues of § 1983 liability, causation of Carter's injuries, and an ADA failure to accommodate claim against the City of Shreveport. The Court does not believe any of its findings in that opinion were in error. Accordingly, Defendants' Motion for Reconsideration (Record Document 83) is hereby **DENIED**. An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 16th day of April, 2021.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT