**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JACQUELINE CARTER AS NEXT   CIVIL ACTION NO. 17-1289
OF FRIEND FOR WILLIAM H. CARTER

VERSUS         JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.   MAGISTRATE JUDGE HORNSBY

<u>**MEMORANDUM RULING**</u>

  Before the Court is a Motion to Exclude Expert Testimony of Dr. Joel Nitzkin (Record Document 50) filed by Defendants. Plaintiff Jacqueline Carter ("Plaintiff") filed an opposition (Record Document 61) and later filed a supplemental memorandum in opposition (Record Document 132). The Court heard oral argument on the motion on March 15, 2023. <u>See</u> Record Document 133. For the following reasons, the Motion to Exclude Expert Testimony of Dr. Joel Nitzkin is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

  The instant suit arises from allegedly inadequate medical care provided to William Carter ("Carter") while he was jailed at the Shreveport City Jail from October 10 through October 18, 2016. <u>See</u> Record Document 20. Carter's mother, Jacqueline Carter, filed suit on his behalf in this Court in October 2017, alleging, among other things, negligence and deliberate indifference by various defendants, including the deputies at the jail. <u>See</u> Record Document 1.

  Carter has been paralyzed from the waist down for over a decade as a result of a gunshot wound to his abdomen at age sixteen and must use a wheelchair for mobility. <u>See</u> Record Document 57-1. Carter has a history of physical and mental health problems,

including for present purposes, severe stage IV pressure ulcers (commonly known as "bed sores") on his hip and buttocks. See id. The nature and extent of these bed sores require daily bandage changing and frequent turning or repositioning while in bed in order to prevent aggravation and possible infection. See Record Document 20 at 6.

Carter was arrested on October 10, 2016, at his home for the unauthorized use of 911 after making several phone calls to dispatch for non-emergency purposes. See id. at 5. Carter's subsequent incarceration forms the basis of this suit.

In the present motion, Defendants challenge one of Plaintiff's expert witnesses, Dr. Joel Nitzkin ("Dr. Nitzkin"), arguing that he lacks the proper qualifications to render any opinion as to Carter's medical treatment in the jail. See Record Document 50 at 1. Further, Defendants argue that even if Dr. Nitzkin were qualified, his opinions are unreliable as to the alleged deterioration of Carter's physical and mental conditions. See id. Defendants assert that "Dr. Nitzkin does not possess the knowledge, skill, experience, training, or education required to render an opinion that Mr. Carter's condition deteriorated while incarcerated." See Record Document 50-1 at 5. Additionally, Defendants argue that "Dr. Nitzkin's opinions as to causation and the alleged deterioration of Mr. Carter's physical and mental condition are based purely on speculation and conjecture, lack a factual and medical basis, and are contradicted by his own deposition testimony." See id. at 6. Thus, Defendants ask this Court to exclude or substantially limit Dr. Nitzkin's testimony at trial. See id. at 10.

In response, Plaintiff argues that Dr. Nitzkin is sufficiently qualified to testify as to Carter's mental and physical deterioration as a result of his stay in Shreveport City Jail. See Record Document 61. Specifically, Plaintiff asserts that the alleged fifteen-day gap

in treatment, which Defendants rely on heavily in their argument, never happened, and thus, Dr. Nitzkin's opinions are reliable. See id. at 3. Further, Plaintiff argues that Dr. Nitzkin may opine on the general medical policies and procedures in place at the jail, as well as any potential violations thereof. See id. at 7.

After hearing oral argument from both parties, the Court is prepared to issue a ruling.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). The Daubert holding provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. See id. at 592–594. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or

standards controlling its operation, and whether it is generally accepted in the relevant scientific community. See id. at 593–594. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002). Thus, the Daubert factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999); Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." U.S. v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The proponent of an expert's testimony bears the burden of proving that it meets the requirements of Rule 702. See Moore v. Ashland Chem., Inc., 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Federal Rule of Evidence 104(a).

## ANALYSIS

Defendants challenge Dr. Nitzkin under Rule 702 because, they argue, he lacks the requisite expert qualifications, and even if his qualifications were sufficient, his opinions are unreliable. See Record Document 50. This Court agrees and finds that Dr.

Nitzkin's opinions as to the alleged physical and mental deterioration of Carter's health while incarcerated must be excluded.

As to Dr. Nitzkin's qualifications, Defendants point out that Dr. Nitzkin admitted he was "not an expert in wound care or the treatment of pressure ulcers." See Record Document 50-1 at 5 (citing Ex. A, pp.41, 42, 82). Further, Defendants assert that Dr. Nitzkin "has not personally treated or seen patients in a clinical setting since his hospital internship in" the 1960s. See id. Finally, Defendants note that Dr. Nitzkin does not have "training, education, or experience treating patients with mental illness." See id. Combining all of these defects, Defendants argue that Dr. Nitzkin lacks the qualifications to testify that Carter experienced physical and mental deterioration because of the care (or lack thereof) provided by the deputies at Shreveport City Jail. See id. at 6.

While Plaintiff argues in response that Dr. Nitzkin is "knowledgeable in applicable medical principles," Plaintiff failed to establish the specific knowledge that would make Dr. Nitzkin's testimony helpful to a jury here. See Record Document 61 at 4. Plaintiff cannot deny that Dr. Nitzkin is not an expert in wound care. Nor can Plaintiff argue that Dr. Nitzkin is an expert in mental health. Thus, while Dr. Nitzkin may understand medical procedure generally, that is simply insufficient to establish his qualifications to discuss medical causation in Carter's case specifically. The Court therefore finds Dr. Nitzkin unqualified to opine on these matters.

However, even if Dr. Nitzkin's general medical background were sufficient under Daubert, the Court further agrees with Defendants that Dr. Nitzkin's opinions are unreliable. As Defendants point out, Dr. Nitzkin relied primarily on "speculation and conjecture" to reach his conclusions as to Carter's alleged deterioration. See Record

Document 50-1 at 6. Defendants highlight that Carter waited fifteen days after his release from jail to seek additional medical treatment. See id. Without any records or reports for Dr. Nitzkin to review concerning those fifteen days, he has no reasonable basis from which to draw his conclusion that Carter experienced a deterioration in health from the time he was incarcerated. In fact, Dr. Nitzkin admitted in his deposition that Carter's condition "has ranged from very bad to terrible" and has "been an up-and-down course with multiple long-term medical issues." See id. at 7 (quoting Ex. A, p.39). And Dr. Nitzkin stated that he had "[n]o reliable information" concerning the condition of Carter's bed sores before he entered the jail. See id. (quoting Ex. A, p.66). Thus, there is simply no reasonable basis for Dr. Nitzkin to conclude that Carter's condition worsened during his period of incarceration, and not sometime shortly before or after.

Ultimately, Dr. Nitzkin has neither the professional background nor the case-specific context necessary to render the proposed opinions in this matter. Thus, the Court finds that Dr. Nitzkin is not qualified to opine that Carter's physical and mental condition deteriorated during his incarceration. Additionally, the Court finds that Dr. Nitzkin's opinions are unreliable based on the lack of documentation concerning Carter's physical and mental condition before, during, and after his time at the city jail. While Plaintiff argues that Dr. Nitzkin should, at a minimum, be allowed to opine on the medical policies in the jail, such an opinion would be irrelevant to the issues to be decided at trial, as such facts have already been established. Thus, Dr. Nitzkin's testimony is excluded in its entirety for failure to satisfy the standards of Rule 702.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Exclude Expert Testimony of Dr. Joel Nitzkin (Record Document 50) is **GRANTED**. Dr. Nitzkin's opinions are excluded from any trial of this matter.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 4th day of April, 2023.

S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT