**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JACQUELINE CARTER AS NEXT OF FRIEND FOR WILLIAM H. CARTER | CIVIL ACTION NO. 17-1289 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a Motion to Exclude Expert Testimony of W. Lloyd Grafton (Record Document 51) filed by Defendants. Plaintiff Jacqueline Carter ("Plaintiff") filed an opposition (Record Document 59) and later filed a supplemental memorandum in opposition (Record Document 131). The Court heard oral argument on the motion on March 15, 2023. See Record Document 133. For the following reasons, the Motion to Exclude Expert Testimony of W. Lloyd Grafton is **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

The instant suit arises from allegedly inadequate medical care provided to William Carter ("Carter") while he was jailed at the Shreveport City Jail from October 10 through October 18, 2016. See Record Document 20. Carter's mother, Jacqueline Carter, filed suit on his behalf in this Court in October 2017, alleging, among other things, negligence and deliberate indifference by various defendants, including the deputies at the jail. See Record Document 1.

Carter has been paralyzed from the waist down for over a decade as a result of a gunshot wound to his abdomen at age sixteen and must use a wheelchair for mobility. See Record Document 57-1. Carter has a history of physical and mental health problems,

1

including for present purposes, severe stage IV pressure ulcers (commonly known as "bed sores") on his hip and buttocks. See id. The nature and extent of these bed sores require daily bandage changing and frequent turning or repositioning while in bed in order to prevent aggravation and possible infection. See Record Document 20 at 6.

Carter was arrested on October 10, 2016, at his home for the unauthorized use of 911 after making several phone calls to dispatch for non-emergency purposes. See id. at 5. Carter's subsequent incarceration forms the basis of this suit.

In the present motion, Defendants challenge one of Plaintiff's expert witnesses, W. Lloyd Grafton ("Grafton"), arguing that Grafton is unqualified to opine in this matter, and his opinions are irrelevant and/or unreliable. See Record Document 51 at 1. Defendants first argue that Grafton's opinion as to Carter's "false arrest" is irrelevant because there is no claim here for false arrest or malicious prosecution. See Record Document 51-1 at 5. Next, Defendants assert that Grafton "does not possess the knowledge, skill, experience, training, or education required to render any opinions concerning the medical treatment or alleged lack thereof," especially as it relates to wheelchair-bound individuals, because Grafton is a retired law enforcement officer, not a medical doctor. See id. Finally, Defendants assert that Grafton's opinions as to proper medical procedures in jails is unreliable because Grafton merely read the jail's policies and stated his opinion on them. See id. at 8.

In response, Plaintiff agrees with Defendants that Grafton should not opine on the issue of any allegedly false arrest. See Record Document 59 at 1. However, Plaintiff argues that Grafton should be permitted to opine on breaches of the standard of care by the officers and deputies who provided medical care to Carter. See id. at 2. Plaintiff

asserts that Grafton, "using his experience as a law enforcement officer, police trainer and associate professor," may testify as to the deputies' failure to follow proper jail procedures. See id. at 3.

After hearing oral argument from both parties, the Court is prepared to issue a ruling.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). The Daubert holding provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. See id. at 592–594. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant

scientific community. See id. at 593–594. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002). Thus, the Daubert factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999); Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." U.S. v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The proponent of an expert's testimony bears the burden of proving that it meets the requirements of Rule 702. See Moore v. Ashland Chem., Inc., 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Federal Rule of Evidence 104(a).

## ANALYSIS

As a primary matter, both parties agree that Grafton should not opine about any allegedly false arrest because such testimony would be irrelevant. See Record Document 51-1 at 5; Record Document 59 at 1. This Court agrees that this opinion is irrelevant to

the claims made here, and thus, the motion to exclude is **GRANTED** as to the opinions in Grafton's report concerning the issue of false arrest.

Next, Defendants challenge Grafton under Rule 702 because, they argue, he lacks the qualifications to opine on the Shreveport City Jail's deputies' failure to follow proper medical procedure. See Record Document 51. The Court agrees with Defendants that Grafton is not qualified to offer conclusions about medical policies and procedures, especially as they relate to wheelchair-bound individuals. Defendants point out that, in his report, Grafton opines as to general medical treatment and the proper care for wheelchair-bound detainees in a jail. See Record Document 51-1 at 6. However, Grafton admitted in his deposition that he is not an expert in medical care; rather, when drawing these conclusions, Grafton stated that he must "rely on the doctor's report." See id. (quoting Ex. 4, pp.20). Grafton further testified that he had no training "other than what a layman might know" about bed sores and how to address them. See id. (citing Ex. 4, pp.22). Thus, the Court finds that Grafton cannot opine on the best way for the deputies to treat a detainee's bed sores because, simply put, Grafton does not know the best way to treat a detainee's bed sores.

Plaintiff asserts that, even if Grafton cannot testify as to the proper treatment for wheelchair-bound individuals specifically, Grafton can opine to general jail policies and procedures due to his experience as a law enforcement officer. See Record Document 59 at 4. However, merely being able to read jail procedures and form a general opinion about them does not make one an expert on those procedures. See In re Air Crash Disaster at New Orleans, La., 795 F.2d 1230, 1233 (5th Cir. 1986) ("Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers

5

can offer in argument."). And as Defendants point out, "Grafton has not worked as a correctional officer, has never been trained on the policies and procedures of a municipal correctional facility (only 'reviewed' them), and has never worked as a consultant with a correctional facility." See Record Document 51-1 at 8. Thus, Grafton lacks the training and specialized knowledge pertaining to jail policies that would qualify him as an expert in his proposed field of tender.

Even further, the deputies named as defendants in this matter have apparently admitted that they did not receive training on how to care for wheelchair-bound individuals in the jail. Thus, Grafton's opinions as to the deputies' failure to follow such a procedure have no place in a trial of this matter. The Court also notes that Grafton failed to include in his report the proposed policies that the deputies should have followed. Without the inclusion of these excerpts in his report, Grafton cannot opine as to these unknown policies and the standards contained therein.

The Court further finds that, although Grafton cannot opine as to legal conclusions, such opinions, like those concerning deliberate indifference, are interwoven throughout his report. Rule 702, however, was "not intended to allow expert witnesses to give legal conclusions or tell the jury what result to reach." Little v. Tech. Specialty Prod., LLC, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013). Removing such improper conclusions from Grafton's report, all that remains are factual statements, which are simply unhelpful to a jury. See Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) (noting that Rule 702 requires an expert's testimony to "assist the trier of fact"). Thus, the Court concludes that Grafton's opinions must be excluded in their entirety for failure to meet the requirements of Rule 702.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Exclude Expert Testimony of W. Lloyd Grafton (Record Document 51) is **GRANTED**. Grafton's opinions are excluded from any trial of this matter.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 4th day of April, 2023.

S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT